[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-10554

————————————————

D.C. Docket No. 3:19-cr-00084-TKW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEAN MATTHEWS,

Defendant-Appellant.


————————————————

Appeal from the United States District Court
for the Northern District of Florida

————————————————

(July 6, 2021)

Before WILSON, ROSENBAUM, and ED CARNES, Circuit Judges.

WILSON, Circuit Judge:

Defendant-Appellant Dean Matthews appeals his 57-month sentence for

making false statements to a firearms dealer.  On appeal, Matthews reasserts

objections that he raised at sentencing to the base offense level adopted by the district court. Matthews specifically takes issue with the application of sentencing enhancements for (1) an offense involving a semiautomatic firearm that is capable of accepting a large capacity magazine, and (2) having a prior conviction for a crime of violence. Because we find no reversible error by the district court, we affirm.

## I.

### A. Background

On September 23, 2019, Dean Matthews pled guilty to a single count of making a false statement to a firearms dealer, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). According to the plea agreement's factual proffer, on April 1, 2019, Matthews attempted to purchase a DPMS Oracle 5.56 rifle from Mike's Outdoor Sports/Mike's Gun Shop (Mike's Gun Shop), a federally licensed firearms dealer in Pensacola, Florida. As part of the purchase process, Matthews completed and signed Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Form 4473—the Firearms Transaction Record. However, Matthews was denied the purchase of the rifle due to his inability to pass a background check. A subsequent review of Matthews's ATF Form 4473 revealed that he falsely answered "no" when asked if he was subject to a court order restraining him from harassing, stalking, or threatening an intimate partner. At the time of the attempted

purchase, Matthews was under an injunction restraining him from having any contact with the listed victim in a pending 2019 felony sexual assault case.

## B. PSI and Sentencing

Matthews's presentence investigation report (PSI) began with a base offense level of 22, pursuant to U.S.S.G. § 2K2.1(a)(3), because (1) the offense involved a semiautomatic firearm capable of accepting a large capacity magazine, and (2) he had a prior felony conviction for a crime of violence. The probation officer found that the firearm "held 31 rounds" and that Matthews's prior conviction for Florida felony battery constituted a crime of violence. The offense level was decreased by three points for timely acceptance of responsibility, for a total offense level of 19. Matthews's criminal history was in category III, resulting in an advisory Guidelines range of 37 to 46 months.

Matthews filed written objections to the PSI's calculation of his base offense level, arguing, as relevant here: (1) that his prior felony battery conviction under Fla. Stat. § 784.041 does not qualify as a crime of violence; and (2) that it was error to conclude his offense involved a firearm capable of accepting a large capacity magazine because, at the time of the offense, the rifle was not loaded with a magazine and Matthews never came into possession of either the rifle or a magazine. In support of his second objection, Matthews noted that the rifle can

3

accommodate different sizes of magazines and that there was no evidence establishing what magazine, if any, he would have purchased with the rifle.

The district court quickly dispensed with Matthews's first objection at sentencing, noting that it was bound by precedent to conclude that Matthews's felony battery conviction constituted a crime of violence. *See United States v. Vail-Bailon*, 868 F.3d 1293, 1295 (11th Cir. 2017) (en banc) (holding that Florida felony battery categorically qualifies as a crime of violence).

To rebut Matthews's second objection, the Government pointed to portions of Matthews's PSI which stated that Matthews was "a former infantryman in the U.S. Army Reserve, trained in combat and marksmanship," making it "highly improbable" that he "purchased the firearm in question without knowing it came with a 30-round magazine and that he would receive both had his application been approved." The Government also presented testimony from Mary Evans, the ATF agent responsible for investigating Matthews's case. Agent Evans confirmed that the "standard magazine" for the rifle in question is a 30-round magazine, but noted that firearms "generally do not have the magazines in" them when people are looking at them at the store. On cross-examination, Agent Evans admitted that she did not ask the salesperson whether they discussed with Matthews what type of magazine would come with the firearm. In response to Agent Evans's testimony,

4

Matthews argued that at the time of the false statement the firearm did not have a magazine and the facts must be judged at the time of the offense.

The court overruled Matthews's objections, adopted the recommendations in the PSI, and ruled:

> I think the evidence I heard is that there was no magazine attached to [the rifle], but I think what I heard was that [Matthews] was purchasing or attempting to purchase a specific firearm which comes standard with a magazine of 30 rounds. And so I think I can find, based upon what I've heard, that it had a magazine that could accept more than 15 rounds in close proximity to it.

Finding that Matthews's criminal history was "underreported"—and the Guidelines range insufficient—the court sentenced Matthews to a term of 57 months in prison followed by three years of supervised release. Matthews timely appealed.

## II.

On appeal, Matthews raises the same objections to his base offense level that he did at sentencing, arguing that he does not meet either of the requirements for enhancing his sentence pursuant to § 2K2.1(a)(3). We address each argument in turn.

### A. Large Capacity Magazine

We review the district court's findings of fact for clear error and its application of the Sentencing Guidelines de novo. *United States v. Tejas*, 868 F.3d

1242, 1244 (11th Cir. 2017) (per curiam).  Clear-error review is deferential, and we will not disturb a district court's factual findings unless we are left with "a definite and firm conviction that the court made a mistake."  *Id.*  Importantly, the clear-error standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently."  *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).  Thus, we may not reverse "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety."  *Id.* at 573–74.

When a defendant challenges one of the factual bases of a sentence enhancement, the Government has the burden of establishing the disputed fact by a preponderance of the evidence.  *United States v. Little*, 864 F.3d 1283, 1290 (11th Cir. 2017).  "This burden requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence."  *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (internal quotation marks omitted).  The sentencing court's factual findings may be based upon facts admitted by the defendant's guilty plea, undisputed statements in the PSI, or evidence presented at the sentencing hearing.  *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009).  The court may also make reasonable inferences from the evidence.  *United States v. Green*, 981 F.3d 945, 953 (11th Cir. 2020); *see also United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013) (per curiam) (stating that at sentencing, a district

court could make inferences "based on common sense and ordinary human experience").

"When interpreting the Guidelines, a guideline's meaning is derived first from its plain language and, absent ambiguity, no additional inquiry is necessary." *United States v. Gordillo*, 920 F.3d 1292, 1297 (11th Cir. 2019) (internal quotation mark omitted). "Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* (alteration adopted).

The district court applies a base offense level of 22 for making a false statement to a firearms dealer "if (A) the offense involved a . . . semiautomatic firearm that is capable of accepting a large capacity magazine . . . and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." U.S.S.G. § 2K2.1(a)(3). The commentary defines a "semiautomatic firearm that is capable of accepting a large capacity magazine" as

> a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in *close proximity* to the firearm.

*Id.* § 2K2.1 cmt. n.2 (emphasis added).  The district court concluded that Matthews's offense involved the latter—that is, that a magazine capable of accepting more than 15 rounds of ammunition "was in close proximity" to the rifle.

Neither we nor our sister circuits have published an opinion addressing how the sentencing enhancement under § 2K2.1(a)(3) applies when the underlying offense is making a false statement to a firearms dealer.  But we have interpreted the definition of a semiautomatic firearm that is capable of accepting a large capacity magazine in cases involving the offense of being a felon in possession of a firearm.

In those cases, we interpreted the phrase "capable of accepting a large capacity magazine" to be "words of possibility, not actuality," and the phrase "at the time of offense" to modify the following subparts.  *United States v. Evans*, 958 F.3d 1102, 1108 (11th Cir. 2020).  We have also discussed the meaning of "close proximity"—based on its plain meaning and in light of our caselaw interpreting application note 14 to U.S.S.G. § 2K2.1—in the context of close proximity between firearms and drugs in drug trafficking offenses, and concluded that close proximity "encompasses both physical distance and accessibility."  *Gordillo*, 920 F.3d at 1298–1300 (emphases omitted).  We adopted *Gordillo*'s approach to determine that a semiautomatic weapon in a case located outside a residence was in close proximity to a large capacity magazine in a bedroom drawer within the

8

residence.  *United States v. Ochoa*, 941 F.3d 1074, 1109–10 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2553 (2020) (mem.).

We have also discussed the history of U.S.S.G. § 2K2.1, which was amended in response to the expiration of the federal assault weapons ban.  *See Gordillo*, 920 F.3d at 1298.  In *Gordillo*, we stated that, while the amendment history did not address the "close proximity" requirement, "the Commission believed the enhanced base offense levels should continue to apply to '*these types of firearms*' . . . . [which] suggests the Commission was concerned with identifying the *type* of gun—making sure the component parts were all present and could be identified as part of a corresponding firearm and magazine."  *Id.*  We further noted that the sentencing enhancements in the Guidelines "are intended to punish firearms crimes involving particularly dangerous *types* of weapons."  *Id.* at 1300.

We can find no basis in the record on which to overturn the district court's factual findings regarding the close proximity of a large capacity magazine to the rifle Matthews attempted to purchase, nor in its legal conclusion that the offense conduct met the standard for the Guidelines enhancement.  Matthews attempted to purchase a semiautomatic rifle that comes standard with a 30-round magazine and committed the offense of making false statements to a firearm dealer while inside Mike's Gun Shop, which sells both firearms and magazines.  Based on these facts, it was reasonable for the district court to infer that a magazine capable of accepting

9

more than 15 rounds of ammunition—that comes "standard" with the rifle—was in close proximity to the rifle Matthews sought to purchase. *See Gordillo*, 920 F.3d at 1300 (rejecting the argument that a firearm and magazine could not be in "close proximity" if they were stored separately); *see also United States v. Chavez*, 584 F.3d 1354, 1367 (11th Cir. 2009) (finding a sentencing court was "free to make" a reasonable inference that is not "speculative to the point of being clearly erroneous").

We also find that the application of the large-capacity magazine enhancement in this context—the attempted purchase of a semiautomatic rifle by an individual subject to a restraining order—furthers the policy rationale behind § 2K2.1 of punishing firearm crimes involving "dangerous *types* of weapons." *See Gordillo*, 920 F.3d at 1300.

Because the district court's account of the evidence "is plausible in light of the record viewed in its entirety," we affirm Matthews's sentence as to this issue. *See Anderson*, 470 U.S. at 574.

### B.  Crime of Violence

"We review *de novo* whether a defendant's prior conviction qualifies as a crime of violence under the Sentencing Guidelines." *United States v. Estrada*, 777 F.3d 1318, 1321 (11th Cir. 2015) (per curiam).

Sitting en banc, we held that a conviction for felony battery under Fla. Stat. § 784.041 is categorically a crime of violence. *Vail-Bailon*, 868 F.3d at 1308. Under the prior-precedent rule, we are bound to follow binding precedent "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010). Accordingly, we affirm the district court's determination that Matthews's prior conviction for Florida felony battery constitutes a crime of violence.

For the foregoing reasons, the rulings of the district court are **AFFIRMED.**