[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14065

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROBERT ROSADO,
a.k.a.
Drew,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:20-cr-00134-SPC-MRM-4

_____

Before JORDAN, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

Robert Rosado appeals his sentence for (1) conspiracy to distribute and possession with intent to distribute crack cocaine and fentanyl, and (2) distribution of crack cocaine and fentanyl. There are two issues on appeal. First, whether the district court erred in imposing a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, under section 2D1.1(b)(12) of the Sentencing Guidelines. Second, whether Rosado's sentence is substantively unreasonable because the court failed to consider the sentencing factors under 18 U.S.C. § 3553(a) and relied too heavily on his prior record. Because we find no reversible error by the district court, we affirm.

## I.    BACKGROUND

In 2020, Rosado pled guilty—without a written plea agreement—to one count of conspiracy to distribute and possession with intent to distribute crack cocaine and fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), and one count of distribution of crack cocaine and fentanyl, in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(C).

Before sentencing, the United States Probation Office prepared a presentence investigation report ("PSR") to help the district court determine Rosado's sentence. The PSR summarized the relevant offense conduct as follows. In June 2020, the Lee County

Sheriff's Office ("LCSO") received information from a confidential source that Rosado's codefendant, Marvin Harris, Jr.,[1] was the leader and supplier of a drug trafficking organization. The LCSO discovered that the Federal Bureau of Investigations had begun investigating Harris in February 2020, and a joint investigation ensued. Harris had enlisted multiple dealers to distribute controlled substances he provided, including crack cocaine and fentanyl, from residences used specifically for drug distribution, known as trap houses.

The drug dealers primarily sold drugs out of a trap house, supplied by Harris, located at 566 New York Drive in Fort Myers, Florida (the "NYD house"). Harris required the drug dealers to pay him a portion of their profits from selling drugs out of the NYD house and charged them rent to sell drugs out of the house. A confidential source worked with law enforcement to purchase crack cocaine and fentanyl out of the NYD house around ten times daily. The confidential source identified Rosado as one of the individuals who sold drugs out of the house. Twice, in August and September 2020, the confidential source contacted and purchased crack cocaine and fentanyl from Rosado at the NYD house.

Pursuant to an outstanding warrant for Rosado's arrest in an unrelated state case, law enforcement located and arrested Rosado at the NYD house, where he possessed four containers of crack

---

[1] The indictment charged Rosado, Harris, and three other individuals in the conspiracy.

cocaine. Lee County charged Rosado with possession of crack cocaine, and he apparently was released on bond. Ten days later, Rosado was arrested again for the instant offenses and, at the time of his arrest, possessed three plastic baggies of cocaine.

The PSR explained that Rosado was involved in the charged conspiracy from at least April 2020 through October 15, 2020, was accountable for 534.41 grams of fentanyl and 399.18 grams of crack cocaine, was a dealer for the conspiracy, and helped maintain the NYD house where a firearm was present.

The PSR grouped Rosado's counts together and, based on the quantity of drugs involved, calculated a base offense level of 30. The PSR applied a two-level enhancement, under section 2D1.1(b)(1) of the Sentencing Guidelines, because his co-conspirators possessed a dangerous weapon, which was reasonably foreseeable to Rosado. The PSR also added a two-level enhancement, under section 2D1.1(b)(12) of the Sentencing Guidelines, because Rosado maintained a premises for the purpose of manufacturing or distributing a controlled substance. The PSR then applied a three-level reduction for acceptance of responsibility, yielding a total offense level of 31.

The PSR noted that Rosado had several adult convictions, including convictions for possession of marijuana and cocaine, resulting in a criminal history category of IV. The PSR calculated that a total offense level of 31 and criminal history category of IV yielded a recommend range under the guidelines of 151 to 188 months' imprisonment. The PSR noted that the statutory

maximum was 40 years for the conspiracy charge and 20 years for the distribution charge.

Before sentencing, Rosado filed a sentencing memorandum, moving for a downward variance and objecting to portions of the PSR. Rosado objected to the § 2D1.1(b)(12) enhancement for maintaining a premises used for drug distribution, arguing that he did not own or rent the NYD house and that he was subordinate to his other co-conspirators concerning controlling access to and activities at the house.

Regarding the § 3553(a) factors, Rosado argued that the court should consider his background as mitigating circumstances, including that his father passed away from falling off a roof in 2005 and that his paternal grandmother and uncle removed him from their family home after his father's death. Rosado emphasized that his mother remarried when he was 16 years' old and that his stepfather was verbally and physically abusive, used powder and crack cocaine daily, and introduced him to smoking crack cocaine when he was 17 years' old, which led to his own crack cocaine addiction.

The government also filed a sentencing memorandum. It argued that the § 2D1.1(b)(12) enhancement was adequately supported by evidence, which showed that Rosado used the NYD house to distribute drugs from August 14, 2020, until October 15, 2020. The government explained that a video recording of the September 2020 drug deal between its confidential source and Rosado showed that Rosado allowed the confidential source to enter the NYD house, which demonstrated his control over the property,

and that he was the only drug dealer in the house. The government explained that a recording of a phone call Harris made to Rosado from jail revealed that Rosado indicated he would "maintain the spot." Doc. 239 at 2.[2] The recording also showed that Rosado and Harris discussed rent and utilities, which demonstrated that Rosado held a possessory interest in the drug premises.[3]

At his sentencing hearing, Rosado reiterated his objection to the § 2D1.1(b)(12) enhancement. The government responded that it had prepared to introduce the video and telephonic evidence referenced in its sentencing memorandum, but Rosado had indicated that he did not object to the accuracy of the facts as proffered. So, the government recited the facts as mentioned in its memorandum and argued that, although Rosado was not on the lease, he had a possessory interest in the NYD house because he paid rent and dealt drugs out of the premises. It explained that Rosado was in complete and singular control of the house during the September 2020 drug deal facilitated by the confidential source and law enforcement. It also referenced the phone call between Harris and Rosado, during which Rosado indicated he would "maintain the spot." Doc. 283 at 9.

---

[2] "Doc." numbers refer to the district court's docket entries.

[3] The government stated that it was prepared to introduce both pieces of evidence at Rosado's sentencing hearing if he disputed them. It also filed an exhibit and witness list showing the same.

The district court overruled Rosado's objection and found that the § 2D1.1(b)(12) enhancement was appropriate. The court explained that the undisputed facts showed that: (1) the NYD house served as a drug distribution point for Harris and the co-conspirators; (2) the individuals, Rosado included, were paying rent to use the residence as a drug distribution center; (3) video evidence showed Rosado exerting control over the premises when the confidential source purchased drugs from him in September 2020; (4) Rosado was the only individual at the premises when the confidential source purchased the drugs, so he had access to and control of the property; and (5) the jail call between Harris and Rosado indicated that Rosado would maintain the NYD house.

The district court found that based on a criminal history category of IV and a total offense level of 31, Rosado's guideline range was 151 to 188 months' imprisonment.[4] Rosado reiterated his request that the court consider his history and characteristics regarding his upbringing. Rosado apologized to the court and asserted that much of his criminal history, which was nonviolent, stemmed from his upbringing.

The district court noted that it had reviewed the PSR and the parties' sentencing memoranda and that it had considered the

---

[4] Based on objections not relevant to this appeal, the PSR was amended to reflect that Rosado was involved in the conspiracy from August 14, 2020, to October 15, 2020, but the amendment did not impact the total base offense level.

§ 3553(a) factors, including Rosado's history and characteristics, the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, and to afford adequate deterrence to criminal conduct. The court also detailed the nature and circumstances of Rosado's offense and referenced his criminal history, that he had not been deterred from committing criminal offenses, and his upbringing. The court declined to vary downward.

The district court sentenced Rosado to 151 months' imprisonment as to each count, to run concurrently. The court also imposed a five-year term of supervised release on the conspiracy charge and a three-year term of supervised release on the distribution charge, also to run concurrently. The court noted that Rosado's 151-month sentence would run consecutively to his term of imprisonment imposed by state authorities. Rosado objected to the application of the guidelines and the substantive reasonableness of the sentence.

This is Rosado's appeal.

## II.    LEGAL STANDARDS

We review a district court's application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *See United States v. Asante*, 782 F.3d 639, 642 (11th Cir. 2015). For a finding to be clearly erroneous, we must be left with a firm

conviction that a mistake has been committed. *See United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).

The government bears the burden of establishing the facts necessary to support a sentencing enhancement by a preponderance of the evidence. *See United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). In relevant part, district courts may base their findings of fact on undisputed statements in the PSR and evidence presented at the sentencing hearing. *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021). The court may also make reasonable inferences from the evidence. *Id.*

## III.    DISCUSSION

We first address whether the district court erred in applying the § 2D1.1(b)(12) enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. Second, we examine whether Rosado's sentence is substantively unreasonable.

### A.    Section 2D1.1(b)(12) Enhancement

Rosado argues that the district court erred in concluding that he qualified for the § 2D1.1(b)(12) enhancement because he did not own or rent the premises, nor was he in charge of the premises. Rather, he contends, Harris maintained the premises and he was subordinate to Harris and the other co-conspirators in controlling the NYD house. We are unpersuaded.

As relevant here, § 2D1.1(b)(12) provides for a two-level enhancement if a defendant maintained a premises to manufacture or

distribute drugs. *See* U.S. Sent'g Guidelines Manual § 2D1.1(b)(12) (U.S. Sent'g Comm'n 2018). The court must consider "whether the defendant held a possessory interest in (e.g., owned or rented) the premises" and "the extent to which the defendant controlled access to, or activities at, the premises." *See id.* cmt. n.17. Manufacturing or distributing a controlled substance need not be the sole purpose for which the residence was maintained, but must be a primary or principal, rather than an incidental or collateral, use. *Id.* Courts consider how frequently the premises were used for manufacturing or distributing drugs and for lawful purposes. *Id.*

The district court did not clearly err when it found that Rosado possessed control over the NYD house sufficient to support the § 2D1.1(b)(12) enhancement. *See Asante*, 782 F.3d at 642. Rosado does not dispute that the NYD house was used to manufacture or distribute drugs. *See United States v. Rodriguez*, 751 F.3d 1244, 1257 (11th Cir. 2014) (explaining that a defendant's failure to object to a factual statement in the PSR constitutes an admission of those facts). And, at sentencing, the government proffered evidence (which Rosado did not dispute) showing that Rosado exerted control of and access to the premises and was the only individual at the NYD house when the confidential source purchased drugs from him in September 2020. It also proffered evidence showing that Rosado and Harris discussed rent and Rosado indicated that he would maintain the premises. Thus, the government met its burden to establish the facts necessary to support the § 2D1.1(b)(12) enhancement by a preponderance of the evidence. *See*

*Dimitrovski*, 782 F.3d at 628. We affirm the district court's determination that the enhancement applied.

## B.    Substantive Reasonableness

Rosado next argues that his 151-month sentence was substantively unreasonable because the district court failed to consider the § 3553(a) factors and relied too heavily on his prior record. Again, we disagree.

We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). "Substantive reasonableness involves examining the totality of the circumstances and whether the sentence is supported by the sentencing factors outlined in § 3553(a)."[5] *United States v. Wayerski*, 624 F.3d 1342, 1353 (11th Cir. 2010). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial

---

[5] Under § 3553(a), the district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

A district court abuses its discretion and imposes a substantively unreasonable sentence only if it: (1) fails to consider relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in considering the proper factors. *Id.* A district court commits a "clear error of judgment" when it "considers the proper factors but balances them unreasonably." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc).

We "commit[] to the sound discretion of the district court the weight to be accorded to each § 3553(a) factor." *United States v. Perkins*, 787 F.3d 1329, 1342 (11th Cir. 2015). We will vacate a district court's sentence as substantively unreasonable "only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors" as evidenced by a sentence "that is outside the range of reasonable sentences dictated by the facts of the case." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020) (internal quotation marks omitted). We do not apply a presumption of reasonableness to sentences within the guideline range, but we ordinarily expect such a sentence to be reasonable. *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014). Likewise, "[a] sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence." *Id.*

Rosado failed to meet his burden of showing that his sentence is substantively unreasonable. *See Rosales-Bruno*, 789 F.3d at 1256. We begin by observing that Rosado's sentence was within the guidelines range and below the statutory maximum. *See Stanley*, 739 F.3d at 656. Although we do not presume that a sentence within the guidelines range is reasonable, we ordinarily expect it to be so. *See id.* The district court properly weighed the § 3553(a) factors, as it noted that it considered Rosado's upbringing when it determined his sentence, in addition to considering his criminal history, his lack of deterrence from committing criminal offenses, and the nature and circumstances of his offense. The weight the district court gave to each of the § 3553(a) factors was committed to its sound discretion. *See Perkins*, 787 F.3d at 1342. The district court therefore did not impose a substantively unreasonable sentence.

## IV.    CONCLUSION

For the foregoing reasons, we affirm Rosado's sentence.

**AFFIRMED.**