[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12285

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JIMMIE LEE TAITE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:17-cr-00102-JB-B-1

_____

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Jimmie Taite appeals his sentence of 24 months' imprisonment following the revocation of his supervised release term. He argues that the district court clearly erred in finding that he committed false imprisonment, which is a "Grade 'A'" violation, and that he is due to be resentenced based solely on the "Grade C" violations.[1] After review, we affirm.

## I.    Background

In 2017, in the Southern District of Alabama, Taite pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and he was sentenced to 33 months' imprisonment to be followed by 3 years' supervised release. The terms of his supervised release included that (1) he "not commit another federal, state, or local crime"; (2) he "not

---

[1] There are three grades of supervised release violations. U.S.S.G. § 7B1.1(a). Grade A violations include conduct constituting a federal, state, or local offense punishable by a term of imprisonment exceeding one year that is a crime of violence. *Id.* § 7B1.1(a)(1). Grade B violations include conduct constituting any other federal, state, or local offense punishable by more than one year of imprisonment. *Id.* § 7B1.1(a)(2). Grade C violations constitute federal, state, or local offenses punishable by less than one year or violations of any condition of supervision. *Id.* § 7B1.1(a)(3). When a defendant has violated more than one of the conditions of his supervised release, "the grade of the violation is determined by the violation having the most serious grade." *Id.* § 7B1.1(b).

leave the judicial district without the permission of the court or probation officer"; (3) he "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer"; and (4) he notify the probation officer within a certain number of days "prior to any change in residence or employment." Taite began serving the supervised release term in May 2020. In December 2020, the district court revoked his supervised release after he pleaded guilty to several violations, including committing the offenses of third-degree domestic violence and simple battery-family violence. The district court sentenced him to 12 months' imprisonment followed by an additional term of 24 months' supervised release.[2]

Taite's new term of supervised release commenced in October 2021. In December 2021, his probation officer petitioned the court for revocation of Taite's supervised release, asserting that Taite violated the conditions of his supervised release, which required him to be truthful with the probation officer, to follow the officer's instructions, and to notify the officer of any change in residence or employment. Later, in May 2022, the probation officer amended the revocation petition to include additional violations—(1) that Taite had committed additional offenses, including false imprisonment, and (2) that he left the Southern

---

[2] As relevant to this appeal, the district court reimposed all of the supervised release conditions it initially imposed in 2017.

District of Alabama and traveled to Georgia without the permission of his probation officer.

In August 2022, the district court held a revocation hearing at which Taite denied the false imprisonment allegation but admitted to the other violations. In support of the false imprisonment violation, the government called an officer with the Griffin, Georgia Police Department. He testified that, in January 2022, he responded to a 911 call made by a child who reported a domestic situation. The government played the body cam footage from the incident for the court. The footage showed that, when officers arrived, they encountered an adult female, S.J., and two children. S.J. reported that Taite lived with her and was the father of one of her children. S.J. said that she and Taite had been fighting. S.J. told the officers that, during the fight, Taite had cut her hair, struck her in the face, choked her, and "barricaded" her in a room. As a result, officers obtained a warrant for battery-family violence, cruelty to children, and false imprisonment under Georgia law.[3] In addition to S.J.'s report on scene that she had been barricaded in the room, the officer testified that 911 dispatch had "advised [that] there was a female trying to get out of the a [sic] room, being held against her will."

Next, the government called S.J. as a witness. She stated that she was there pursuant to a subpoena and did not want to testify.

---

[3] Taite left the scene before officers arrived and was apprehended a month later.

With regard to the events in question, she admitted that she and Taite had "a physical altercation," but she denied that Taite choked her, struck her, or that he barricaded her in a room. Instead, she stated that they were arguing and "tussling," that Taite "mushed" her in the face (but did not strike her), and that Taite was "[j]ust standing in front of" the doorway to the bedroom. She acknowledged that she told officers that Taite had barricaded her in the bedroom, but she clarified that "[m]aybe [she] didn't use the right terminology." She maintained that she "could have gotten out" of the bedroom at any time, but that she "would have rather . . . just have avoided all of that." On cross-examination, she admitted that she and Taite argue "from time to time" and that they sometimes physically push each other during these arguments. She confirmed that she did not call the police (her child did) and that she could have freely walked out of the bedroom at any time.

Finally, the government called Taite's probation officer as a witness. He testified that S.J. contacted him approximately a month after the January incident and stated that, since the incident, Taite had been living with her, "repeatedly physically abusing her[,] and [that] she was in fear for her safety." She told the probation officer that "she was afraid to call the police . . . because she was worried [Taite] would learn that she was the one that

called the police."[4]  After their conversation, the probation officer informed the United States Marshals of Taite's location and he was arrested.  The probation officer confirmed that some of the offenses that formed the basis of Taite's prior revocation in 2020 involved domestic violence with S.J.  On cross-examination, the probation officer admitted that he had no way of knowing whether it was S.J. or someone else who called him and that the caller was not under oath during the conversation.  However, he believed she was reliable and telling the truth.

Taite did not present any evidence in rebuttal.  The district court found by a preponderance of the evidence that Taite committed false imprisonment and that he violated the condition of his probation that prohibited him from committing any new offenses.

Based on the district court's findings, Taite faced a statutory maximum of 24 months' imprisonment[5] and 24 months'

---

[4] Initially, S.J. was reluctant to give her identity to the probation officer and wanted to remain anonymous, but she eventually revealed her identity.

[5] Possession of a firearm by a convicted felon (Taite's original offense) is a Class C felony.  Section 3583(e)(1) provides that, if the court finds by a preponderance of the evidence that the defendant has violated a condition of supervised release, the court may revoke supervised release and "require the defendant to serve all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release[.]"  18 U.S.C. § 3583(e)(3).  However, "a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation . . . more than 2 years in prison if such offense is a class C or D felony . . . ."  *Id.*  Therefore,

supervised release.  The government recommended a sentence of 24 months' imprisonment with no supervised release to follow. Taite's counsel argued that the state charges against Taite were still pending and that he would be punished for the new offenses separately.  He also argued that all of the testimony presented did not show "any considerable violence of any kind."  Therefore, counsel requested that the district court exercise its discretion and sentence Taite to 12 months' imprisonment.

Taite then made a statement to the court.  He admitted that he was not supposed to be in Georgia because of his probation.  He further admitted that he and S.J. get into arguments because he cheats but that the arguments were not physical.  He asserted that prison was not helping him and made his anger issues worse because he had to adopt a violent mindset to survive in prison.  He asked the court for leniency and emphasized that he and S.J. just "got in a little argument," noting that S.J. testified that he had not hurt her and had not "detain[ed] her in the room or none of that."

The district court noted that, although it heard S.J.'s testimony in court, it also saw her on the bodycam footage speaking to officers right after the incident, and the fact that a child made the 911 call undermined the contention that it was just a minor argument.  The court further emphasized that the grounds for the present revocation were very similar to those for Taite's

---

Taite faced a statutory maximum of two years' imprisonment for the revocation.

prior revocation and that Taite's continued violations of the supervised release terms indicated to the court that Taite had "no respect for the conditions that [were] put on [him] and that [he] [was] just not going to comply with them." Accordingly, the district court reasoned that the 24-month sentence with no supervised release was appropriate. Taite's counsel renewed his objection to the "[Grade] A violation." This appeal followed.

## II.    Discussion

Taite argues that the district court clearly erred in finding that he committed false imprisonment—a Grade A violation—and that he is entitled to be resentenced under a lower guidelines range that does not include this violation.[6] He maintains that, because S.J. testified under oath at the hearing that she was not falsely imprisoned, the district court clearly erred in finding otherwise.

The district court may, after considering certain factors in § 3553(a), revoke a defendant's supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3). We review the "district's court's revocation of supervised release for an

---

[6] Based on the grade of the violation and his criminal history, the applicable guidelines range was 24 to 30 months' imprisonment. U.S.S.G. § 7B1.4(a). Without the finding that Taite had committed a Grade A violation (based on the offense of false imprisonment), Taite would have faced a guidelines range of 6 to 12 months' imprisonment.

22-12285              Opinion of the Court                    9

abuse of discretion."[7] *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010).   The district court's findings of fact made during a revocation proceeding "are binding on this Court unless clearly erroneous."  *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993) (quotation omitted).   "Clear-error review is deferential, and we will not disturb a district court's factual findings unless we are left with a definite and firm conviction that the court made a mistake."  *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021) (quotations omitted).  "Thus, we may not reverse if the district court's account of the evidence is plausible in light of the record viewed in its entirety."   *Id.* (alteration adopted) (quotation omitted).

Here, the district court's finding by a preponderance of the evidence that Taite committed false imprisonment was not clearly erroneous.   Although S.J. denied at the hearing that Taite "barricaded" her in the room and maintained that she could have left at any time, she admitted that Taite was blocking the doorway. Importantly, her testimony conflicted with her recorded statement to officers, and the district court was entitled to give more weight

---

[7] The government argues that Taite failed to preserve this issue for appeal and that our review should be for plain error only.  We disagree.  Taite contested the allegation that he violated the terms of his supervised release by committing another state offense, namely, false imprisonment.  Indeed, the false imprisonment allegation was the main focus of the revocation hearing. Moreover, Taite reiterated his objection to the "[Grade] A violation" at the end of the revocation hearing.  Accordingly, we conclude that he preserved the challenge to the false imprisonment finding for appeal.

to the recorded statement she made to officers right after the incident. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (explaining that "[c]redibility determinations are typically the province of the factfinder" and "a trial judge's . . . choice of whom to believe is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony" (emphasis in original) (quotation omitted)). Additionally, the officers testified that, on the day in question, 911 dispatch had advised officers "[that] there was a female trying to get out of the a [sic] room, being held against her will." Accordingly, based on the body camera footage and the information reported to 911 dispatch by the child who placed the call, it was not clearly erroneous for the district court to find by a preponderance of the evidence that Taite committed false imprisonment. *See* O.C.G.A. § 16-5-41(a)–(b) (providing that "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority," and the offense is punishable by one to ten years' imprisonment); *Smith v. State*, 724 S.E.2d 885, 887–88 (Ga. 2012) (upholding a false imprisonment conviction where the victim testified that the defendant physically blocked the doorway and prevented her from leaving the bedroom). Consequently, we are not "left with a definite and firm conviction that the court made a mistake." *Matthews*, 3 F.4th at 1289. Accordingly, we affirm Taite's sentence.

**AFFIRMED.**