[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10378

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEDRIC ROLANDO CLINTON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00208-TFM-B-1

_____

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Dedric Rolando Clinton, Jr. appeals his sentence of 14 months' imprisonment imposed following the revocation of his supervised release term. He argues that the district court abused its discretion in revoking his supervised release because it (1) plainly erred in finding that he violated the condition of his supervised release prohibiting him from associating with people engaged in criminal activity, and (2) clearly erred in finding that he possessed and had access to a firearm. After review, we affirm.

## I.    Background

In 2023, Clinton pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343, and he was sentenced to four months' imprisonment to be followed by five years' supervised release. During the first 120 days of his supervised release, Clinton was subject to location monitoring. The terms of his supervised release included, among other provisions, that (1) he "not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon" and (2) he must "not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer."

Clinton began serving the supervised release term on September 26, 2023. In December 2023, Clinton's probation officer petitioned the court for revocation of Clinton's supervised release,

asserting that Clinton violated the conditions of his supervised release by allowing his sister to smoke marijuana in his home and having a firearm in his residence.

The district court held a revocation hearing at which Clinton denied the violations. The government called Clinton's probation officer, Victor Robinson, as a witness. Robinson testified that, on November 28, 2023, he conducted a routine home inspection at Clinton's residence. Upon entering the house, Robinson smelled marijuana, and Clinton admitted to Robinson that his sister had visited earlier and smoked marijuana in the residence. Robinson then proceeded with the rest of his inspection which involved checking the location monitoring equipment in Clinton's bedroom. As Robinson went to exit Clinton's bedroom, Robinson observed the barrel of a firearm behind a dresser near the door. At that time, Clinton, three other males, and Clinton's girlfriend were all in the bedroom, and Robinson asked everyone to exit the room. Robinson then retrieved the gun—a loaded Glock 19x—from behind the dresser.

Clinton initially denied knowing that the weapon was there and denied that it was his. Instead, he asserted that the gun belonged to another of the individuals in the residence, Keon Cotton, but Cotton denied that it was his gun. Then Clinton's girlfriend, said that the gun belonged to another one of the males present, Christian Phillips, who was visiting from out-of-state. Phillips stated the gun belonged to him and that he had placed it under the dresser three days prior to Robinson's visit. Phillips,

however, did not have any proof of ownership of the gun, and claimed to have no identification on him, and could not remember his social security number. Robinson took custody of the weapon, and instructed Clinton that he should report to the local probation office the next day.

Robinson stated that, at the probation office, Clinton changed the story again, stating that the gun did not belong to Phillips. Instead, he stated that the gun belonged to a Tyrell James, and that James had given the gun to either Phillips or Cotton. He maintained that he did not know that the gun was in his residence, much less his bedroom.

On cross-examination, Robinson explained that, on the day of the home inspection, Robinson arrived at Clinton's home, rang the doorbell and knocked several times, but Clinton did not answer. Robinson then began calling Clinton's cell phone. Clinton answered his phone after the third or fourth phone call attempt and then came to the door. Robinson stated that he thought that Clinton had been in his bedroom prior to coming to the door, because in explaining the delay in answering the phone, Clinton said "his phone was either in the bedroom or laying down and he didn't have access to it." When asked whether Clinton had complied with Robinson's requests, Robinson admitted that Clinton complied with all of his questioning and had been truthful when admitting that his sister had smoked marijuana in the residence.

Clinton's counsel also argued that Clinton, who is confined to a wheelchair, would not have had "any kind of ready" access to the firearm due to its location. Robinson, however, testified that a person sitting in a chair could have easily accessed the gun by reaching down and grabbing it from under the dresser.

Following Robinson's testimony, Clinton's counsel urged the district court that, if it deemed Clinton guilty of the asserted violations, to "consider something short of a revocation that involves incarceration," such as allowing Clinton to remain at home but hire a custodian to assist him in enforcing house rules and stop people from bringing drugs or guns to his home. And counsel emphasized Clinton's medical needs and paraplegia as grounds for not incarcerating Clinton.

In response, the government argued that, while it was not unsympathetic to Clinton's physical condition, he had already received a significant break in his sentence due to his medical conditions, and it was his responsibility to follow the terms of his supervised release, which he failed to do.

The district court expressed skepticism that the gun would not have been reachable by a person in a wheelchair, noting that it observed one of Clinton's counsel sitting in a chair and reaching under a podium in the courtroom. Clinton's counsel argued that "the difference" was that counsel had use of his legs to act "as a counter-weight" when bending over to reach for something, but Clinton did not.

The district court ultimately found by a preponderance of the evidence that Clinton violated the terms of his supervised release. The district court explained that, based on the testimony, the firearm was "readily visible," and the court believed that Clinton knew the firearm was there based on the totality of the evidence. Additionally, "it was very clear that [Clinton] knew [his] sister was smoking marijuana in the house." Finally, the district court stated that it did not "credit" Clinton's statements to his probation officer "because [his] initial underlying conviction [was] for a fraud offense." Accordingly, the district court revoked Clinton's term of supervised release, and sentenced him to 14 months' imprisonment to be followed by a term of 46 months' supervised release. This appeal followed.

## II.    Standard of Review

The district court may, after considering certain factors in 18 U.S.C. § 3553(a), revoke a defendant's supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. *See* 18 U.S.C. § 3583(e)(3). We generally review the "district's court's revocation of supervised release for an abuse of discretion." *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010). We will "vacate the sentence if, but only if, we 'are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *United States v. Irey*, 612 F.3d 1160, 1190 (11th

24-10378               Opinion of the Court                    7

Cir. 2010) (en banc) (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

### III.   Discussion

Clinton argues that he did not violate the condition prohibiting him from associating with people engaging in criminal activity because his association with his sister while she used marijuana in his home was merely "incidental," citing *Arciniega v. Freeman*, 404 U.S. 4 (1971).  Additionally, he argues that there was insufficient evidence to find that he knew of or possessed the firearm or that he could even access it given that he was in a wheelchair and could not reach a gun behind the dresser.  We address each argument in turn.

### A.  The Condition Prohibiting Association with Anyone Engaged in Criminal Activity

Clinton does not dispute that his sister engaged in criminal activity when she smoked marijuana in his home.  Nevertheless, he argues that, under the Supreme Court's decision in *Arciniega*, he should not have been found to be in violation of the terms of his supervised release because his contact with her was merely incidental and was no more than a one-time casual contact.

Because Clinton failed to raise this issue in the district court, we review this claim for plain error only.  *United States v. Moore*, 22 F.4th 1258, 1264 (11th Cir. 2022).  To demonstrate plain error, Clinton must show

(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are met, then a court may exercise its discretion to correct the error if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 1264–65.  "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

Here, Clinton cannot show that plain error occurred.  He argues that under *Arciniega*, a non-association provision of a term of supervised release is not intended to apply to incidental contacts, such as the contact he had with his sister.  But his reliance on *Arciniega* is misplaced.  In *Arciniega*, a condition of the defendant's federal parole was that he was "forbidden to 'associate' with other ex-convicts."  404 U.S. at 4.  The defendant's parole was revoked for violating this condition because "[he] worked at a restaurant-nightclub that employed other ex-convicts."  *Id.*  The Supreme Court reversed, holding that the non-association condition was not intended "to apply to incidental contacts between ex-convicts in the course of work on a legitimate job for a common employer. Nor is such occupational association, standing alone, satisfactory evidence of nonbusiness association violative of the parole restriction."  *Id.*  Clinton's violation, however, did not result from an incidental contact at work.  Rather, he permitted his sister to

enter his home and engage in criminal activity in his home. Clinton has not cited any authority extending *Arciniega*'s incidental contact holding to scenarios outside the workplace, much less to scenarios like this one where a defendant has ultimate control of what goes on in his home. Accordingly, he cannot show any plain error occurred in the district court finding by a preponderance of the evidence that he violated the non-association condition of his supervised release. *See Lejarde-Rada*, 319 F.3d at 1291.

## B. The Firearm-Related Condition

Clinton argues that there was insufficient evidence for the district court to find that he knew that the gun was in his room because it was unclear whether he was in the bedroom prior to answering the door and there were other individuals present in his bedroom. He also argues that there was insufficient evidence to show that he possessed and could access the firearm.

The district court's findings of fact made during a revocation proceeding "are binding on this Court unless clearly erroneous." *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993) (quotation omitted). "Clear-error review is deferential, and we will not disturb a district court's factual findings unless we are left with a definite and firm conviction that the court made a mistake." *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021) (quotations omitted). "Thus, we may not reverse if the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Id.* (alteration adopted) (quotation omitted).

The government can show that a defendant possessed a gun by proving either actual or constructive possession. *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011). "Constructive possession of a firearm exists when a defendant does not have actual possession but instead knowingly has the power or right, and intention to exercise dominion and control over the firearm." *Id.* A defendant simply being in the same vicinity of a gun or associating with someone who possesses a gun is insufficient to show constructive possession. *Id.* However, constructive possession over a gun exists when a defendant has "ownership, dominion, or control over [the] object itself or control over the premises in which the object is concealed." *United States v. Villarreal*, 613 F.3d 1344, 1359 (11th Cir. 2010).

Here, the district court found that, based on the testimony, Clinton knew of, had possession of, and had access to the firearm. This finding was not clearly erroneous. Although Clinton denied knowledge of the gun to Robinson, the district court was entitled to disbelieve Clinton's statement. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (explaining that "[c]redibility determinations are typically the province of the factfinder" and "a trial judge's . . . choice of whom to believe is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony" (emphasis in original) (quotation omitted)). Additionally, the gun was found in Clinton's residence inside his bedroom—a location that he had dominion and control over. And Robinson testified that the firearm was clearly visible behind the dresser. This evidence supported the district

court's finding that Clinton knew of and possessed the gun. *Villarreal*, 613 F.3d at 1359; *see also Matthews*, 3 F.4th at 1289 ("[W]e may not reverse if the district court's account of the evidence is plausible in light of the record viewed in its entirety." (alteration adopted) (quotation omitted)).

Furthermore, the district court found that Clinton could have accessed the gun, despite his contentions that he could not have reached it from his wheelchair. While Clinton quarrels with this finding, it is plausible in light of the record given Robinson's testimony that Clinton could have reached it and the district court's own observations. Consequently, we are not "left with a definite and firm conviction that the court made a mistake," and we hold there was no clear error in the court's firearm-related finding. *Matthews*, 3 F.4th at 1289.

## IV.    Conclusion

For the above reasons, we conclude that the district court did not abuse its discretion in revoking Clinton's term of supervised release, and we affirm.

**AFFIRMED.**