[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-14179

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BRUCE B. MACK, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:18-cr-00298-TFM-B-1

_____

Before JILL PRYOR, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Bruce Mack, III, appeals his sentence of 24 months' imprisonment imposed upon revocation of his term of supervised release. After careful review, we affirm.

## I.

In 2018, Mack pleaded guilty to committing Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). The district court sentenced him to 46 months' imprisonment followed by a three-year term of supervised release. It directed that certain conditions would apply while Mack was on supervised release. These conditions included that Mack could not: commit another federal, state, or local crime; possess a firearm; or unlawfully possess a controlled substance. Another condition directed that Mack could not "associate with any persons engaged in criminal activity" or "any person convicted of a felony unless granted permission to do so by [his] probation officer." Doc. 50 at 4.[1]

In August 2021, Mack began serving his term of supervised release. A few months later, he tested positive for using marijuana. His probation officer filed a petition to revoke his supervised release based on this violation. Mack admitted to the violation, and the district court revoked his supervised release, sentenced him to

---

[1] "Doc." numbers refer to the district court's docket entries.

72 hours of incarceration, and extended his term of supervised release to 35 months.

About a year later, Mack's probation officer filed another petition alleging that Mack had violated the terms of his supervised release. The petition alleged that Mack had been involved in an incident in which he eluded police, possessed marijuana, and constructively possessed three firearms. The petition reported that two police officers had tried to stop his vehicle after observing him commit a traffic violation. But he refused to stop and led the officers on a chase through a residential neighborhood with speeds reaching 70 miles per hour. During the chase, Mack failed to stop at multiple stop signs. The chase ended when he turned down a dead-end street.

When Mack stopped the car, one of the passengers, Tramaine Powell, ran away on foot. An officer pursued him and took him into custody. Mack and another passenger, Javonte Fuller, also exited the car and tried to flee on foot. Fuller was wearing a full-face ski mask. An officer drew his gun and ordered them not to move. A third passenger, David Powell, remained in the car and put his hands in the air. When the officer who stopped Mack and Fuller looked into the car, he saw two pistols in David Powell's front waistband and an AR-style firearm standing upright in the backseat in plain view.

According to the revocation petition, the officers placed the four men in handcuffs and conducted an inventory search of the vehicle. In the vehicle's front and center dash compartments, they

found Mack's driver's license, his paycheck stubs, approximately $600 in cash, and marijuana.

The officers advised Mack and the passengers of their *Miranda*[2] rights. They asked Mack why he fled. He said that the passengers told him to go. He denied ownership of the marijuana. And when asked if he had a criminal history, he stated that he did not. When the officers questioned the passengers, each passenger stated that Mack fled from police because he believed he would go back to jail. Each passenger reported that the firearms belonged to David Powell. David Powell admitted that Mack had told him not to bring firearms.

The officers then questioned Mack further. At that point, he admitted that he was on probation. He told the officers that he did not see David Powell bring any guns into the car because he was on the phone. When asked how he failed to see a full-length AR-style firearm standing upright in the backseat, Mack responded that he did not know it was there.

According to the petition, Mack was arrested and charged with various Alabama state crimes. When he was booked in jail, Mack asked an officer to unlock his cell phone and look up a few phone numbers. When the officer unlocked Mack's phone, he saw on the home screen a picture of Mack holding an AR-style firearm like the one found in the backseat.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The petition alleged that Mack violated the conditions of his supervised release barring him from: (1) committing a federal, state, or local crime; (2) possessing a firearm; (3) unlawfully possessing a controlled substance; and (4) associating with any person engaged in criminal activity or any person convicted of a felony. For the fourth violation, the petition alleged that Mack had associated with the three passengers while they were engaged in criminal activity. It did not allege that any of the passengers was a convicted felon. The petition asked the district court to revoke Mack's term of supervised release.

Along with the revocation petition, the probation officer submitted a confidential sentencing recommendation to the court. She determined that Mack's guideline range was four to 10 months' imprisonment and the statutory maximum was 24 months' imprisonment. She recommended that the court impose a sentence of 24 months' imprisonment to be followed by 10 months of supervised release.

The district court held a revocation hearing. It began the hearing by reviewing the charged violations. The court correctly stated the first three charged violations in the petition were that Mack had: (1) committed a federal, state, or local crime; (2) possessed a firearm; and (3) unlawfully possessed a controlled substance. But it inaccurately stated the fourth alleged violation. Although the petition charged Mack with violating the terms of his supervised release by associating with individuals engaged in criminal activity, the district court stated that he was charged with

"associat[ing] with felons without permission." Doc. 122 at 2. But no one—not the government, Mack, or the probation officer—pointed out the mistake. Instead, Mack "admit[ted] to the violations." *Id.*

The court then considered an appropriate sentence. Mack's attorney requested a sentence within the applicable guideline range of four to 10 months. He asked the court to consider that while on supervised release Mack had graduated high school with honors and worked two jobs. Mack's grandfather and one of Mack's employers spoke about Mack's good character and explained that he had made a mistake. When Mack addressed the court, he thanked his probation officer for her advice and support.

In discussing an appropriate sentence, the court expressed concern about Mack's conduct. It found that he had led police on a high-speed chase through a residential area, which created a risk that Mack or someone else could have died or been hurt. The court also discussed other aspects of Mack's conduct, including that he was "associating with other people who are felons." *Id.* at 12. It also found that Mack knew there were firearms in his vehicle.

The court determined that because of the severity of his conduct, Mack would have to "suffer a consequence that is beyond the guidelines." *Id.* The court ultimately imposed a sentence of 24 months' imprisonment to be followed by 10 months of supervised release. After the court announced the sentence, Mack objected to the "upward departure." *Id.* at 13.

## II.

We review a sentence imposed upon revocation of supervised release for reasonableness. *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008). In reviewing for reasonableness, we ask "whether the [district] court abused its discretion." *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008) (internal quotation marks omitted).

Reviewing the reasonableness of a sentence is a two-step process. "We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). "The party challenging the sentence bears the burden to show it is unreasonable[.]" *Id.*

When a defendant raises a challenge to the procedural reasonableness of his sentence for the first time on appeal, we review for plain error only. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). To establish plain error, a defendant must demonstrate that: (1) the district court erred; (2) the error was "plain"; (3) "the error affected his substantial rights"; and (4) "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alterations adopted) (internal quotation marks omitted).

## III.

On appeal, Mack challenges the procedural and substantive reasonableness of his sentence.

### A.

We begin with Mack's challenge to the procedural reasonableness of his sentence. When reviewing the procedural reasonableness of a sentence, we consider whether the district court committed a significant procedural error. *See Vandergrift*, 754 F.3d at 1308. Procedural errors include failing to calculate or improperly calculating the guideline range, treating the Sentencing Guidelines as mandatory, failing to consider the § 3553(a) factors,[3] selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. *United States v. Trailer*, 827 F.3d 933, 935–36 (11th Cir. 2016).

Mack argues that the district court made two types of procedural errors: (1) it based his sentence on clearly erroneous factual findings, and (2) it failed to adequately consider the applicable guideline range. Because Mack did not raise any objection to the procedural reasonableness of his sentence in the district court, we review for plain error.

---

[3] When imposing a term of imprisonment for a supervised release violation, a court must consider a number of the § 3553(a) factors: the nature and circumstances of the offense and the history and characteristics of the defendant, the need to afford adequate deterrence to criminal conduct, the need to protect the public, the need to provide the defendant with training or treatment, the kinds of sentencing range established for that offense, any policy statements from the Sentencing Commission, the need to avoid unwarranted sentence disparities between similarly situated defendants, and the need to provide restitution. 18 U.S.C. § 3583(e)(3); *see id.* § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7).

### 1.

Mack argues that the district court based his sentence on several clearly erroneous factual findings. For a factual finding to be clearly erroneous, we must be "left with a definite and firm conviction that the court made a mistake." *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021) (internal quotation marks omitted). We will not reverse if the district court's account of the evidence is "plausible in light of the record viewed in its entirety." *Id.* (internal quotation marks omitted). In addition, the district court is entitled to draw reasonable inferences from the evidence. *Id.* The district court may base its factual findings on, among other things, facts admitted by the defendant. *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009).

Mack argues that the district court made three clearly erroneous factual findings: (1) his conduct put others at risk of serious bodily injury or death, (2) he knew there were firearms in his vehicle, and (3) he was associating with individuals who were felons. He says that the record supports none of these findings.

We begin with whether the district court made a clearly erroneous factual finding in determining that Mack's conduct put others at risk of serious bodily injury or death. As an initial matter, the facts alleged in the revocation petition, to which Mack did not object, reflect that he led police on a high-speed chase through a residential neighborhood. We conclude that these allegations are sufficient to support an inference that Mack's conduct put others at risk of serious bodily injury or death. *See Matthews*, 3 F.4th at 1289.

The question remains, though, whether in imposing a sentence the district court could rely on the allegations in the revocation petition. At the revocation hearing, Mack admitted to committing the charged violations of the conditions of his supervised release. But in admitting to violating a federal, state, or local law, he did not necessarily admit to engaging in conduct that put others at risk of bodily injury or death. And at the hearing he did not say that he admitted to the probation officer's factual narrative set forth in the revocation petition. But he also did not object to any aspect of that narrative.

We cannot say that the district court plainly erred in relying on the facts alleged in the revocation petition. Mack has not cited, nor are we aware of, any binding precedent holding that when a defendant admits to the violations charged in a revocation petition and does not object to any of the factual allegations in the petition, the district court commits reversible error by basing the revocation sentence, in part, on those unobjected-to allegations. *See Vandergrift*, 754 F.3d at 1307; *cf. United States v. Bennett*, 472 F.3d 825, 833–34 (11th Cir. 2006) (explaining that the failure to object to factual allegations in a presentence investigation report admits those facts for sentencing purposes).

We next consider whether the district court clearly erred in finding that Mack knew there were firearms in his car. The unobjected-to facts alleged in the revocation petition show that the three weapons found in the car were in plain view, which supports an inference that Mack, who was driving the car, knew the weapons

were in the car. Again, the district court did not plainly err in basing the revocation sentence on the unobjected-to allegations in the revocation petition.

Mack also argues that the district court's factual finding that he was associating with convicted felons was clearly erroneous. Importantly, there was no allegation in the revocation petition that any of the passengers in Mack's vehicle had a felony conviction. Instead, the petition alleged that Mack had violated the conditions of his supervised release because he associated with individuals who were engaged in criminal activity.

Even assuming that the district court clearly erred in making a factual finding that Mack was associating with convicted felons, Mack also must show that the error affected his substantial rights. To establish that the error affected his substantial rights, he must demonstrate that there is a "reasonable probability that, but for the error, the outcome" of his sentencing proceeding would have been different. *Rosales-Mireles v. United States*, 585 U.S. 129, 134–35 (2018) (internal quotation marks omitted). We have recognized that a defendant cannot meet this burden when the effect of an alleged error on his sentence is uncertain. *See United States v. Rodriguez*, 398 F.3d 1291, 1299–1300 (11th Cir. 2005).

Mack has not demonstrated a reasonable probability that he would have received a lower sentence but for the district court's erroneous factual determination about his association with convicted felons. Even without this determination, the district court could have applied an upward variance and sentenced Mack to 24

months. After all, Mack admitted that while on supervised release he had violated the law, constructively possessed firearms, and unlawfully possessed a controlled substance. The facts in the unobjected-to petition show that Mack led police on a high-speed chase. And they support an inference that at the time of his arrest Mack was associating with individuals who were engaged in criminal conduct: one of the passengers was wearing a full-face ski mask and another was carrying three firearms. Given all this, we can only speculate whether Mack's sentence would have been different had the court not erroneously found that he associated with convicted felons. For this reason, Mack has not met his burden of showing that the district court's clearly erroneous factual finding affected his substantial rights.

**2.**

Mack argues that the district court made a second type of procedural error at sentencing because it failed to adequately consider the applicable guideline range.

Before imposing a sentence upon revocation of supervised release, a district court must consider the sentencing range under the Guidelines. *United States v. Campbell*, 473 F.3d 1345, 1348–49 (11th Cir. 2007). To satisfy this requirement, there must be "some indication that the district court was aware of and considered" the applicable range under the Sentencing Guidelines. *Id.* at 1349 (internal quotation marks and citations omitted).

Here, after reviewing the record, we conclude that the district court adequately considered the applicable guideline range.

True, the district court did not expressly state the range on the record. But Mack correctly stated that the guideline range was four to 10 months and asked for a sentence within that range. When the court pronounced the sentence, it stated that because of the severity of his conduct, Mack was "going to have to suffer a consequence that is beyond the guidelines." Doc. 122 at 12. Taking these comments together, we conclude that the district court adequately considered the applicable guideline range.[4]

**B.**

We now turn to Mack's argument that his sentence was substantively unreasonable. He argues that in imposing a 24-month sentence, the district court erred in weighing the relevant factors and failed to give sufficient weight to factors that were in his favor.

We will reverse a sentence for substantive unreasonableness "only if[] we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted). When a district court imposes an

---

[4] Mack also argues that the district court committed an error because it treated the applicable statutory maximum sentence of 24 months "as mandatory." Appellant's Br. 15–16. But we see no indication that district court believed it was required to impose the statutory maximum sentence here. Instead, the court's statements show that it understood it was exercising discretion to impose an upward variance.

upward variance based on the § 3553(a) factors, it must have a justification compelling enough to support the degree of the variance. *United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012). Importantly, "the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016).

After considering the facts of this case, we are not left with a definite and firm conviction that the district court committed an error of judgment when it applied an upward variance and imposed a 24-month sentence. The court provided a sufficiently compelling justification to support the variance: the seriousness of Mack's conduct in leading police on a high-speed chase. Although Mack argues that the district court should have given greater weight to the evidence of his rehabilitation, we cannot say that the district court abused its considerable discretion when it weighed the applicable § 3553 factors. *See id.*

**AFFIRMED.**