**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-12417

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

RENALDO SMITH,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:23-cr-00009-MTT-CHW-1

————————————————

Before JORDAN, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

After Renaldo Smith pleaded guilty to assaulting a federal law enforcement officer and discharging a firearm in furtherance of

a crime of violence, the district court imposed a total sentence of 300 months' imprisonment. On appeal, Smith challenges his sentence as procedurally and substantively unreasonable. After careful consideration, we affirm.

## I.

In January 2023, a United States Marshals Service fugitive task force tracked Smith, who had several outstanding arrest warrants, to a house in Warner Robins, Georgia. Task force agents surrounded the house and knocked on the door, announcing that they were police with a warrant. After they knocked and repeated the announcement several times, Smith yelled from the inside that he was coming. He cracked open the door, and an agent instructed him to come outside because they had a warrant for his arrest. Smith slammed the door shut and refused to come out.

Agents used a battering ram to force open the door. As soon as the door was open, agents heard gun shots coming from inside the house. They ran from the house, took cover, and called for reinforcements. The local police's SWAT team came to the scene, and a standoff with Smith ensued.

An officer made phone contact with Smith and attempted to persuade him to come out of the house. Smith refused, saying he would not go back to prison. He sent text messages to the mother of his child, telling her that he was "going to shoot it out with police" and "wasn't going back to prison." Doc. 81 at 15.[1] Officers sent

---

[1] "Doc." numbers refer to the district court's docket entries.

a robot equipped with a camera and microphones inside the house. They saw that Smith had a pistol and an assault rifle. At one point, they watched Smith point the pistol at his head.

Several hours into the standoff, officers shot tear gas into the house. Immediately after, Smith fired multiple rounds toward the officers. The officers returned fire. After an officer shot Smith in the arm, he surrendered. He was taken to a hospital and later placed under arrest. No officer sustained injuries.

After Smith surrendered, law enforcement searched the house. They recovered the pistol and assault rifle, both of which were loaded with ammunition, as well as additional ammunition for each weapon.

A grand jury returned an indictment charging Smith with one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); fourteen counts of assaulting a federal law enforcement officer, in violation of 18 U.S.C. § 111(a); and one count of discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). He pleaded not guilty.

At the request of Smith's attorney, the court ordered a competency evaluation. A forensic psychologist evaluated Smith and diagnosed him with unspecified schizophrenia spectrum and other psychotic disorder, antisocial personality disorder, alcohol use disorder, cannabis use disorder, opioid use disorder, and unspecified depressive disorder. She determined that Smith was not suffering from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him

or to assist properly in his defense. Based on this evaluation, the court determined that Smith was competent to stand trial.

Smith subsequently pleaded guilty to one count of assaulting a federal law enforcement officer (Count Two) and one count of discharging a firearm in furtherance of a crime of violence (Count Sixteen). The government agreed to dismiss the remaining charges. The court accepted Smith's guilty plea.

Before sentencing, a probation officer prepared a presentence investigation report ("PSR"). The PSR described Smith's lengthy criminal history, which included several juvenile offenses. Smith's first case in juvenile court arose out of conduct that occurred when he was nine years old. By the time he was sixteen, Smith had been adjudicated delinquent more than ten times in Georgia juvenile court.

Smith also had multiple adult criminal convictions. The PSR reported that Smith's first adult criminal conviction arose out of an incident that occurred in January 2007, when he was sixteen years old. Smith and several others robbed a convenience store by pointing a pistol at the cashier. In Georgia state court, Smith pleaded guilty to robbery by force. He was sentenced as a first offender to a ten-year term of probation, which he began to serve in June 2007.

Less than a month into his probation, Smith committed another crime. He forcibly entered an apartment and stole a victim's money and vehicle. In probation revocation proceedings, the state court found that Smith committed the new offenses of armed robbery, burglary, and theft by taking. It revoked his probation on the

underlying robbery by force charge and imposed a new sentence of 20 years with nine years to be served in custody and the remainder on probation.

In April 2012, Smith was released from prison and placed on parole. About a year later, he was involved in an incident in which he possessed methamphetamine and marijuana and ran from an officer. In a 2013 criminal case in Georgia state court, he pleaded guilty to possession of methamphetamine and to obstruction of an officer. For these offenses, he received a total sentence of ten years with eighteen months to be served in custody and the remainder on probation. In addition, the state court again revoked his parole for his 2007 conviction for robbery by force.

In June 2014, Smith was released from custody and again placed on parole. A few months later, he began to serve the term of probation imposed for his 2007 and 2013 convictions.

In February 2019, while on probation, Smith was stopped for speeding and found to be in possession of hydrocodone and marijuana. He was charged in Georgia state court with possession of hydrocodone and possession of less than an ounce of marijuana. In 2021, he failed to appear at a hearing in the criminal case, and the state court issued a bench warrant.[2]

---

[2] In probation revocation proceedings, Smith admitted to possession of hydrocodone with intent to distribute and possession of less than an ounce of marijuana.

In August 2019, Smith hit the mother of his child and damaged her car window. He was charged in Georgia state court with battery and criminal trespass. In 2021, he failed to appear at a hearing related to these charges, and the state court issued another bench warrant.

In September 2020, a police officer stopped Smith for a traffic infraction. During the stop, Smith admitted that there was a firearm in his vehicle. When the officer ordered him out of the vehicle, Smith refused to comply and instead drove away, leading officers on a high-speed chase. Smith abandoned his vehicle and escaped on foot. When officers searched the vehicle, they recovered a loaded pistol, ammunition, several bags of marijuana, multiple digital scales, and drug packaging materials. Smith was charged in Georgia state court with fleeing or attempting to elude a police officer, possession of marijuana with intent to distribute, and possession of a firearm by a convicted felon. In addition, he faced revocation proceedings in both his 2007 and 2013 criminal cases. When he failed to appear at a revocation hearing, the state court issued yet another bench warrant for his arrest.

The PSR also described an incident that occurred in December 2021 at Fort Bliss in El Paso, Texas, where Smith's girlfriend was stationed. On New Year's Eve, Smith, who was drunk, pushed his girlfriend and her daughter. The PSR reported that Smith took his girlfriend's gun and "barricaded himself" inside her home. Doc. 60 at 18. Military police, "hostage negotiators," and other law enforcement officers arrived at the home and tried to persuade Smith

to come out. *Id.* But he refused to leave. Officers eventually entered the house, apprehended Smith, and took him into custody. The same day, he was released from custody and later banned from Fort Bliss. Several months later, a grand jury in the Western District of Texas returned an indictment charging Smith with possession of a firearm and ammunition by a convicted felon.

The PSR reported that Smith also had another recent Georgia conviction. When he failed to appear at a hearing in his state criminal case arising out of the August 2019 domestic violence incident, he was charged with bail jumping. After he was arrested in this case, he pleaded guilty in state court to bail jumping and received a sentence of 60 days' confinement with credit for time served. After he entered the plea, the State dropped the criminal charges against him arising out of the August 2019 domestic violence incident.

The PSR reflected that at the time of his sentencing Smith had several criminal proceedings pending. For his 2007 and 2013 convictions, he was facing probation revocation proceedings in Georgia state court. In addition, he had two pending criminal cases in Georgia state court: one arising out of the February 2019 incident when he was found in possession of hydrocodone and marijuana and the other arising out of the September 2020 incident when he possessed a gun and marijuana and fled from law

enforcement. He also had a pending federal criminal case in the Western District of Texas arising out of the Fort Bliss incident.[3]

The PSR set forth Smith's guidelines range. For Count Two (assault on a law enforcement officer), the PSR reported that his total offense level was nineteen. It stated that his criminal history score was nine,[4] which placed him in criminal history category IV. Given his total offense level and criminal history category, the PSR calculated his guidelines range for Count Two as 46 to 57 months' imprisonment and noted that the statutory maximum sentence for this count was 20 years' imprisonment. For Count Sixteen (discharging a firearm in furtherance of a crime of violence), the PSR stated that Smith's guidelines range was 120 months, which was the mandatory minimum for this count. It explained that the sentences imposed for Counts Two and Sixteen had to run consecutively. The PSR also stated that an upward variance could be

---

[3] While this appeal was pending, the United States voluntarily dismissed the indictment in that case.

[4] Smith's 2007 conviction for robbery by force scored three points, his 2013 conviction for possession of methamphetamine and obstruction of an officer scored three points, and his 2023 conviction for bail jumping scored two points. In addition, because Smith had seven or more criminal history points and committed the instant offense while under a criminal justice sentence, he received one additional criminal history point.

appropriate based on the sentencing factors set forth at 18 U.S.C. § 3553(a).[5]

Smith objected to the PSR's statement that an upward variance could be appropriate. He did not object to any other part of the PSR.

At the sentencing hearing, the government sought an upward variance based on the § 3553(a) factors. It focused on the nature and circumstances of the offense, which involved an armed standoff during which Smith twice opened fire on law enforcement. The government asserted that this conduct showed a "blatant disregard for the safety and lives of others." Doc. 62 at 2. In addition, the government asked the court to consider that Smith had a lengthy criminal history that included violent conduct and committed the offenses in this case while on probation.

The government also argued that an upward variance was warranted given Smith's conduct during the December 2021

---

[5] Under § 3553(a), a district court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

incident at Fort Bliss. It asserted that at Fort Bliss, like in this case, Smith had barricaded himself in a house with a firearm and refused to come out when confronted by police. Given these similarities, the government asserted that "[i]t stands to reason that [Smith] had been wishing he had opened fire on the officers in the Western District of Texas on the prior occasion" and suggested that he may have "promised himself that when law enforcement inevitably arrived for him again[] that he would do all in his firepower to stop them." *Id.* at 6. The government cited no evidence to support its assertions about Smith's motivations.

The government also argued that other § 3553(a) factors—the need to reflect the seriousness of the offense, the need to promote respect for the law, the need to provide just punishment, the need to afford adequate deterrence, and the need to protect the public—supported an upward variance. It stated that Smith had "violated every probation sentence" given to him and shown a "blatant disregard for the safety of others" with his conduct in this case. *Id.* at 10.

In contrast, Smith asked the court to impose a sentence within the guidelines range. He acknowledged the seriousness of his offenses and that his conduct put law enforcement in danger. He argued that the Sentencing Guidelines, including the relevant enhancements, fully accounted for his conduct and reflected the seriousness of the offense. If the court nevertheless decided to vary upward, he asserted that a reasonable total sentence would be no

longer than 240 months—that is, 120 months on Count Two and 120 months on Count Sixteen.

Smith asked that the court in weighing the nature and circumstances of the offense also consider his mental state at the time of the incident in this case. He told the court that he was in a "desperate state" during the standoff in the case. Doc. 63 at 7. When task force agents arrived to arrest him, he was "in a spiral of self-deprecating auditory hallucinations telling him that he was a failure and would be better off dead." *Id.* at 8. He explained that he was suicidal during the standoff and had sent text messages to his loved ones stating that he wanted to die.

Smith also asked the court to consider his history and characteristics, pointing to his difficult childhood and the lack of treatment for his mental health conditions. During his childhood, he experienced verbal and psychological abuse at home. At five, he was diagnosed with attention deficit hyperactivity disorder. He had an intellectual disability and received special education services in school. By the time he completed fifth grade, Smith had changed schools six times. Although his father was rarely present, Smith had two uncles who were strong figures in his childhood. But by the time Smith was twelve, both had died by suicide. A few months after his second uncle died, Smith was admitted to a state psychiatric hospital where he was diagnosed with depression and oppositional defiant disorder. After he received these diagnoses, there was a "lack of follow-up," and Smith did not receive the mental health treatment that he needed. Doc. 81 at 29.

By his early teenage years, Smith was smoking marijuana and gambling. He spent his teenage years in the juvenile system. When he turned seventeen, he was transferred to an adult jail.

As a young adult, Smith was frequently in the custody of the Georgia Department of Corrections. He told the court that while in custody, his mental health deteriorated. He began hearing auditory hallucinations. And each time he was released from prison, his substance abuse escalated significantly.

Smith also asked the court to consider that his condition had improved when he received mental health treatment while in custody awaiting sentencing in this case. After the psychological evaluation, he was prescribed medication to treat his mental health conditions. While on medication, he had no issues at the jail where he was incarcerated. Smith promised the court that in the future he would take medication and seek mental health treatment.

In addressing the § 3553(a) factors, Smith discussed the incident at Fort Bliss. He did not object to or otherwise challenge the portion of the PSR describing what occurred during that incident. Instead, Smith primarily responded to the government's assertions that he had regretted not firing upon the officers at Fort Bliss and then decided that when he next encountered officers, he would shoot them. He argued that these assertions were based on "complete speculation" and lacked any evidentiary support. *Id.* at 33. He emphasized there was no evidence that he had "attempted to do any harm to anyone with th[e] firearm" at Fort Bliss. *Id.* at 32. He also noted that after the incident at Fort Bliss, he was quickly

released from custody and "simply charged with possessing a firearm." *Id.*

Smith also argued that if the court imposed a total sentence of more than 240 months, it would create an unwarranted sentencing disparity. He pointed to sentences imposed in other federal cases in which a defendant had shot at a law enforcement officer. He explained that many of these cases were not comparable because they involved defendants who received life sentences after shooting and killing law enforcement officers. He did note that there was a Northern District of Georgia case in which a defendant shot a law enforcement officer and received a 30-year sentence.

He primarily focused on the sentence imposed on a defendant in a Middle District of Georgia case who had shot at a federal agent. Smith's chosen comparator—who went to trial and was convicted of assaulting a federal officer, brandishing a firearm during a crime of violence, and conspiring to possess with intent to distribute multiple controlled substances—received a 319-month sentence. Although the comparator, like Smith, shot at a federal agent, Smith argued that he should receive a shorter sentence than the comparator because (1) he had pleaded guilty instead of going to trial and (2) he had not committed a controlled substances offense. Although Smith contrasted himself with the comparator who received the 319-month sentence, he provided the court with no information about the comparator's criminal history or whether the comparator had been involved in other armed standoffs with law enforcement.

After hearing from the government and Smith, the court discussed Smith's guidelines range. It stated that for Count Two (assault on a federal officer), the guidelines range was 46 to 57 months, and for Count Sixteen (discharging a firearm in furtherance of a crime of violence), it was 120 months.

The court then addressed the § 3553(a) factors. Given the nature and circumstances of the offense, the seriousness of the offense, Smith's history and characteristics, the need to promote respect for the law, the need to provide adequate deterrence, and the need to protect the public, the court concluded that an upward variance was warranted. It stated that the guidelines range "fail[ed] to capture the gravity and seriousness of the offense." *Id.* at 49–50.

The court discussed the incident at Fort Bliss. It mentioned that the only charge Smith faced arising out of the incident was for being a felon in possession of a firearm. But it determined that Smith's conduct at Fort Bliss involved far more than simply possessing a firearm as a convicted felon because he had "barricaded himself in the house [and] armed himself." *Id.* at 49. It also stated that the incident at Fort Bliss "involved a hostage." *Id.* The court remarked that it was a "mystery" how Smith engaged in this conduct but was quickly released from custody. *Id.* The court observed that after his release, Smith was able to "come[] back to middle Georgia armed to the teeth" and remarked that the standoff in this case "followed so quickly the incident at Fort Bliss." *Id.* at 49–50.

The court ultimately imposed a total sentence of 300 months, which consisted of 180 months on Count Two and

120 months on Count Sixteen with the sentences to run consecutively. The court directed that these sentences also would run consecutive to any term of imprisonment imposed against Smith for violating his probation or for the other pending criminal charges.

This is Smith's appeal.

## II.

"We review the reasonableness of a sentence for abuse of discretion using a two-step process." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). "We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances." *Id.*

## III.

On appeal, Smith challenges both the procedural and substantive reasonableness of his sentence. We address each issue in turn.

## A.

We begin with Smith's challenge to the procedural reasonableness of his sentence. When reviewing procedural reasonableness, we consider whether the district court committed a significant procedural error. *See United States v. Vandergrift*, 754 F.3d 1303, 1308 (11th Cir. 2014). Procedural errors include failing to calculate or improperly calculating a defendant's guidelines range, treating the Sentencing Guidelines as mandatory, failing to consider the § 3553(a) sentencing factors, selecting a sentence based on clearly

erroneous facts, or failing to adequately explain the chosen sentence. *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016).

Smith argues that the district court here made clearly erroneous factual findings about the Fort Bliss incident. For a factual finding to be clearly erroneous, we must be "left with a definite and firm conviction that the court made a mistake." *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021) (citation modified). We will not reverse if the district court's account of the evidence is "plausible in light of the record viewed in its entirety." *Id.* (citation modified).

When making factual findings at sentencing, a court may rely on undisputed statements in the PSR. *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006); *see also United States v. Williams*, 989 F.2d 1137, 1142 (11th Cir. 1993) (holding that a district court did not err at sentencing when it relied on unobjected-to statements in a PSR regarding the facts surrounding the defendant's previous arrests). But if a defendant objects to a fact set forth in the PSR, "the government bears the burden of proving that disputed fact by a preponderance of the evidence." *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009).

Smith argues that the district court made clearly erroneous factual findings at sentencing when it "relied on disputed facts" about the Fort Bliss incident "without any evidence." Appellant's Br. 15. We disagree. The PSR set forth facts regarding what occurred at Fort Bliss, and Smith did not object to this portion of the

PSR. Because there was no objection, the district court could rely on the PSR's description of the incident.

Smith nevertheless argues that the district court clearly erred when it stated at sentencing that the Fort Bliss incident involved a hostage because there was no evidence that he took a hostage. The PSR reported that the incident at Fort Bliss began when Smith pushed his girlfriend and her daughter and then barricaded himself in his girlfriend's home. It then explained that the law enforcement officers who responded included "hostage negotiators." Doc. 60 at 18. Given this record, it was plausible for the district court to conclude that the presence of hostage negotiators meant that Smith had taken a hostage during the incident. We thus reject Smith's argument that the district court made a clearly erroneous factual finding and conclude that his sentence was procedurally reasonable.

## B.

Smith also challenges his sentence as substantively unreasonable. When reviewing the substantive reasonableness of a sentence, we consider the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). We will vacate a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (citation modified).

When the district court imposes a sentence with an upward variance, it "must have a justification compelling enough to support the degree of the variance and complete enough to allow [for] meaningful appellate review." *United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012). In addition, a major variance should be supported by a more significant justification than a minor variance. *Gall*, 552 U.S. at 50. But a district court need not account for every § 3553(a) factor, nor must it discuss each factor or its role at sentencing. *United States v. McBride*, 511 F.3d 1293, 1297 (11th Cir. 2007). "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors." *Tome*, 611 F.3d at 1378.

Smith challenges his sentence for Count Two as substantively unreasonable. Certainly, the sentence for this count included a substantial upward variance. Smith's guidelines range for Count Two was 46 to 57 months, but the court imposed a sentence of 180 months on this count, which resulted in a total sentence of 300 months.

After carefully reviewing the record, we cannot say that the district court abused its discretion when it imposed this sentence. At the sentencing hearing, the court carefully weighed the § 3553(a) factors and discussed several of them. It provided a substantial justification for the upward variance based on the seriousness of Smith's conduct when he shot at the law enforcement officers who were trying to arrest him on several outstanding warrants. In addition, the court weighed Smith's personal history and

characteristics, which included his lengthy criminal history and his involvement in earlier incidents where his conduct put law enforcement officers at the risk of serious injury or death.

In challenging his sentence, Smith points to his mental health issues and says that he did not intend to kill an officer during the standoff. He is arguing, in effect, that the district court should have weighed the § 3553(a) factors differently and given greater weight to the aspects of his history and characteristics that supported a shorter sentence. But "the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016). Here, we cannot say that the district court abused its considerable discretion when it imposed a sentence of 180 months on Count Two. In addition, we note that the sentence imposed by the district court was still well below the statutory maximum of 20 years that applied to this offense, which further indicates that it was reasonable. *See United States v. Grushko*, 50 F.4th 1, 20 (11th Cir. 2022).

Smith also attacks his total sentence of 300 months as unreasonable, saying it created an unwarranted sentencing disparity. He points to the 319-month sentence that the defendant in another Middle District of Georgia case received after shooting at a federal agent. He argues that his sentence should have been substantially shorter than the comparator's because the comparator went to trial and also was convicted of a controlled substance offense.

We are not persuaded that Smith's total sentence of 300 months' imprisonment created an unwarranted sentencing disparity. We have explained that there cannot be an unwarranted sentencing disparity when the individuals whose sentences are being compared "are not similarly situated." *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015). To evaluate whether a comparator is similarly situated, "[t]he underlying facts of the crime and all of the individual characteristics are relevant." *Id.*

Here, we are lacking important information about the comparator. Smith provided no information about the comparator's criminal history, including whether he was under a criminal justice sentence at the time he shot at the federal officer or whether he had been involved in previous incidents that placed a law enforcement officer at serious risk of injury or death. Without such details, we cannot say that Smith carried his burden in establishing that his sentence created an unwarranted sentencing disparity. *See id.*; *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (explaining that a "well-founded claim of [an unwarranted] disparity" requires "that apples are being compared to apples" (citation modified)).

After carefully reviewing the record in this case, we are not "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at

24-12417             Opinion of the Court                    21

1190 (citation modified). Because the district court's sentence here was reasonable, we affirm.

**AFFIRMED.**